# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELVIN JOHNSON, LEONARD GUERRERO, AND STEPHANIE GUERRERO, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Action No.  SA-17-CV-371-XR |
| FELIPE RAMOS, INDIVIDUALLY, ERICA CEJA, INDIVIDUALLY, JEREMY SPENCER, INDIVIDUALLY, BRIAN SULLIVAN, INDIVIDUALLY, AND THE CITY OF SAN ANTONIO, TEXAS, | § § § § § § § | |
| *Defendants*. | § § | |

## ORDER

On this date, the Court considered the status of the above captioned-case. After careful consideration, the Court GRANTS Defendant Jeremy Spencer's Motion to Join (Docket no. 71), DENIES Plaintiffs Leonard Guerrero and Stephanie Guerrero's Motion for Partial Summary Judgment (Docket no. 35), and GRANTS Defendants Erica Ceja, Felipe Ramos, and Brian Sullivan's Cross-Motion for Partial Summary Judgment (Docket no. 57).

## BACKGROUND

### I.      Factual Background

In the early morning hours of May 2, 2015, Defendant Sergeant Brian Sullivan of the San Antonio Police Department ("SAPD") was working on routine patrol in the area of West Martin Street. Docket no. 57 at 1–2. Sgt. Sullivan reports that he saw a dark gray vehicle stop at a stop sign, but not before it pulled past the intersection curb line. *Id.* at 2. Sgt. Sullivan allegedly

1

passed the vehicle, looked in his rearview mirror, and saw the vehicle turn right behind him and veer into oncoming traffic. *Id.* After Sgt. Sullivan allegedly saw the vehicle move across the lane markings and suspected the driver was impaired or very distracted, he changed lanes to allow the vehicle to pass him so he could make a traffic stop. *Id.*; Docket no. 35 at 3. The vehicle, however, turned left before it passed Sgt. Sullivan, and Sgt. Sullivan lost track of the vehicle. Docket no. 57 at 2. Sgt. Sullivan then continued driving to try to relocate the vehicle. *Id.*

Within a few minutes, another vehicle approached Sgt. Sullivan and two individuals told him that a gray vehicle had just hit a boy on a bicycle on a nearby street and fled the scene. *Id.* at 3; Docket no. 35 at 3. The eyewitnesses directed Sgt. Sullivan to the vehicle they believed hit the boy on the bicycle, which was parked in front of a nearby duplex. Docket no. 35 at 4; Docket no. 57 at 3. Plaintiffs allege that Leonard Guerrero resides in one unit of the duplex, and his daughter Plaintiff Stephanie Guerrero resides in the other unit. Docket no. 49.

Sgt. Sullivan approached the duplex, and Ms. Guerrero exited the duplex. Docket no. 35 at 4. Plaintiff Melvin Johnson, who did not move for summary judgment, also exited the duplex and went to the front yard. *Id.* Sgt. Sullivan asked Johnson if he lived at the home and Johnson said that he did. *Id.* Sgt. Sullivan asked Ms. Guerrero who had been driving the gray vehicle, Ms. Guerrero responded that her father, Leonard Guerrero had been, and Sgt. Sullivan asked Ms. Guerrero to go get her father. *Id.* at 4; Docket no. 57 at 3. Ms. Guerrero went inside, and after a few minutes, Sgt. Sullivan walked up and knocked on the door. Docket no. 35 at 4. Ms. Guerrero exited the duplex and told Sgt. Sullivan she would not consent to him entering the home and would not allow her father to speak with him. *Id.* Sgt. Sullivan alleges that Ms. Guerrero physically blocked entry to the residence by holding the doorknob and that she appeared

intoxicated. Docket no. 57 at 3. Ms. Guerrero alleges she only stood on the porch with her hand on the doorknob. Docket no. 35 at 4.

Thereafter, Defendants Detective Ramos and Officers Ceja and Spencer arrived at the duplex following a dispatch from Sgt. Sullivan. *Id.*; Docket no. 57 at 3. Sgt. Sullivan attempted to enter the duplex, and he alleges Ms. Guerrero attempted to grab him. Docket no. 57 at 3. Ms. Guerrero alleges that Sgt. Sullivan yanked her hand off the doorknob and pushed her backward. Docket no. 35 at 5. Det. Ramos then handcuffed Ms. Guerrero and sat her on the porch while Sgt. Sullivan entered the duplex to locate Mr. Guerrero, followed by Off. Ceja and Det. Ramos. Docket no. 57 at 4.

Defendants allege they all observed Mr. Guerrero's intoxicated state inside the duplex. *Id.* According to Defendants, Mr. Guerrero was so intoxicated that he had trouble standing, reeked of alcohol, and was slurring his speech. Docket no 35-1 at 3; Docket no. 35-4 at 6. Another officer was called to the scene to administer a field sobriety test, which allegedly showed Mr. Guerrero was intoxicated, and he was then formally arrested. *Id.*

## II.     Procedural History

Mr. Guerrero was later charged with driving while intoxicated, jailed, and released on $1,000 bond. Docket no. 35 at 5. Mr. Guerrero was not charged with a moving violation or an offense related to a hit-and-run accident. *Id.* Ms. Guerrero was released and not charged with an offense. Docket no. 11 at 7. Sgt. Sullivan stated at an administrative hearing that based on his experience as an officer he believed there would be evidence lost in the case and that there was a possible flight risk through the back door, and he didn't have time to secure a warrant, so he entered the duplex without a warrant. Docket no. 35-2 at 5.

On April 26, 2017, Plaintiffs filed their Original Complaint bringing claims of excessive force, unlawful entry, unlawful arrest, and municipal liability. Docket no. 1. On November 22, 2017, the Guerreros filed their motion for partial summary judgment, arguing the undisputed facts show that Defendants Sullivan, Ceja, and Ramos violated the Fourth and Fourteenth Amendments by arresting them without probable cause and entering their home without a warrant or probable cause and exigent circumstances. Docket no. 35. On March 20, 2018, Sullivan, Ceja, and Ramos filed their cross-motion for partial summary judgment, arguing Mr. Guerrero has no standing to assert a claim for unconstitutional entry, the officers had probable cause to arrest Mr. Guerrero, the warrantless entry was justified by exigent circumstances, the officers had probable cause to arrest Ms. Guerrero, and the officers are entitled to qualified immunity. Docket no. 57. On June 13, 2018, Off. Spencer filed his Motion to Join the Cross-Motion filed by the other individual Defendants. Docket no. 71.

## ANALYSIS

### I. Legal Standard

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 510 U.S. 859 (1993). Once

the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant, or, in other words, that the evidence favoring the non-movant is insufficient to enable a reasonable jury to return a verdict for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.4 (1986). In making this determination, the court should review all evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).

## II.     Defendant Spencer's Motion to Join Cross-Motion

As an initial matter, on June 13, 2018, Defendant Spencer filed a Motion for Leave to Join Defendants' Cross-Motion for Partial Summary Judgment. Docket no. 71. Off. Spencer did not originally join in the Defendants' Cross-Motion for Partial Summary Judgment, but he now seeks leave to join in the motion insofar as it concerns the Guerreros' claims of unconstitutional entry against him.

Plaintiffs oppose Off. Spencer's motion, arguing that the documents they have do not indicate the full scope of Off. Spencer's involvement in the incident, including when he allegedly entered Plaintiffs' homes, and that discovery is ongoing. Docket no. 72 at 3–4. Plaintiffs further argue that, although the other individual Defendants submitted declarations in their cross-motion regarding the entry and arrests at the duplex, no such affidavit has been submitted from Off.

Spencer to address his actions. *Id.* at 4. Thus, Plaintiffs argue summary judgment is not appropriate as to Off. Spencer, and the Court should not allow him to join the cross-motion.

The Court finds it appropriate to grant Off. Spencer's motion to join in Defendants' cross-motion to the extent that he may be entitled to similar relief as to the previously moving Defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (finding several courts have held that where "a defending party establishes that plaintiff has no cause of action . . . this defense generally inures also to the benefit of a defaulting defendant" and that "it would be 'incongruous' and 'unfair' to allow some defendants to prevail, while not providing the same benefit to similarly situated defendants"). To the extent that there are genuine disputes of material fact as to Off. Spencer individually, the Court will consider such disputes in evaluating whether he is entitled to summary judgment.

### III.      Mr. Guerrero's Claims for Unlawful Entry and Unlawful Arrest

Mr. Guerrero argues he is entitled to summary judgment on his claims for unlawful entry against Sullivan, Ceja, and Ramos and unlawful arrest against Sullivan and Ceja because Defendants entered his home and arrested him without a warrant or without probable cause and exigent circumstances. Defendants argue they are entitled to summary judgment because Mr. Guerrero has no standing to assert a claim for unconstitutional entry and that the warrantless entry and arrest were justified. In the alternative, Defendants argue they are entitled to qualified immunity.

Section 1983 prohibits a person, "under color of any statute, ordinance, regulation, custom, or usage of any State" from subjecting, or causing to be subjected, any citizen or any person within the jurisdiction of the United States "to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but simply provides a "method for vindicating federal rights elsewhere conferred." *Flores v. City of Palacios*, 381 F.3d 391, 404 (5th Cir. 2004). To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). Here, Plaintiffs allege a violation of their Fourth Amendment rights by SAPD employees.

Defendants raise the defense of qualified immunity "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Once qualified immunity is properly raised, the plaintiff bears the burden of negating the defense, even on summary judgment. *Id.* Claims of qualified immunity require a two-step analysis. As public officials, Defendants are entitled to qualified immunity on Plaintiffs' § 1983 claims unless: (1) Plaintiffs show that the officers' conduct violated an actual constitutional right; and (2) the officers' "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). The court has discretion to decide which prong of the two-part inquiry to address first. *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "The qualified immunity standard gives ample room for

mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brown v. Lynch*, 524 F. App'x 69, 74 (5th Cir. 2013) (citing *Brumfield*, 551 F.3d at 326). Furthermore, "objective reasonableness" is a matter of law for the court to determine. *Id.* A police officer's conduct is objectively reasonable unless all reasonable officials in that officer's circumstances would have known that the conduct violated the plaintiff's Constitutional rights. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). In other words, "[i]f reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 34 (1986)).

To make an arrest without a warrant, an officer must have probable cause. *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). Absent a warrant, an officer must have both probable cause and exigent circumstances to make a lawful entry into a person's home and arrest the person. *See Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (citing *Payton v. New York*, 445 U.S. 573 (1980)).

### A. Defendants' Arrest of Mr. Guerrero Without a Warrant

First, the Court will determine if Mr. Guerrero has demonstrated that the officers violated his constitutional rights when they arrested him without a warrant. For the officers to have lawfully entered Mr. Guerrero's home and arrest him, there must have existed both probable cause and exigent circumstances.

"Probable cause justifying an arrest 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect committed, is committing, or is about to

commit an offense.'" *Hogan v. Cunningham*, 722 F.3d 725, 731 (5th Cir. 2013) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *DeFillippo*, 443 U.S. at 36. Further, an officer's state of mind is not relevant to establish probable cause; an officer's provided reason for executing an arrest need not be the same offense for which the facts provide probable cause. *See Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Defendants argue that they had probable cause to arrest Mr. Guerrero because there were sufficient facts for a prudent person to believe that Mr. Guerrero committed two offenses: failure to stop and render aid under Texas Transportation Code § 550.021(c)(1)(B) and driving while intoxicated under Texas Penal Code §§ 49.04, 49.07. Mr. Guerrero argues that Defendants lacked both probable cause and exigent circumstances to enter his home without a warrant and arrest him for any alcohol-related offense. Regarding the failure to stop and render aid offense, Mr. Guerrero argues that there were no exigent circumstances justifying Defendants' warrantless entry into his home.

The Court finds that there was probable cause to arrest Mr. Guerrero for failure to stop and render aid. The evidence shows that while on patrol Sgt. Sullivan saw a dark gray vehicle commit a moving violation, and Sgt. Sullivan briefly followed that vehicle until he lost track of it and continued driving to try to relocate it. Within a few minutes, eyewitnesses drove up to Sgt. Sullivan and informed him that they saw a gray vehicle hit a boy on a bicycle on a nearby street and flee the scene. These eyewitnesses directed Sgt. Sullivan to the vehicle they allegedly saw hit the boy on the bicycle, and the eyewitnesses stated they saw the driver enter the duplex. Sgt.

Sullivan states that when he saw the vehicle parked outside of the duplex, he recognized it as the same vehicle he saw commit a moving violation, followed briefly before he lost track of it, and intended to stop. When Sgt. Sullivan asked Ms. Guerrero who had been driving the vehicle, she told Sgt. Sullivan that her father Mr. Guerrero had been.[1] Sgt. Sullivan asked Ms. Guerrero to go get her father. Ms. Guerrero entered the duplex and later returned, telling Sgt. Sullivan she would not consent to Sgt. Sullivan entering her home and would not allow her father to speak with him. The eyewitness accounts of the illegal conduct by the driver of the dark gray vehicle,[2] their identification of the dark gray vehicle, Sgt. Sullivan's identification of that vehicle as the same one he saw commit certain moving violations and had been tracking, and Ms. Guerrero's identification of her father Mr. Guerrero, who was inside the duplex, as the driver of that vehicle provided Sgt. Sullivan with probable cause to believe that Mr. Guerrero had committed the offense of failure to stop and render aid.

Plaintiffs cite to case law that addresses informants and anonymous tips, but in this case, Sgt. Sullivan received information from eyewitnesses. "An ordinary citizen's eyewitness account of criminal activity and identification of a perpetrator is normally sufficient to supply probable cause to stop the suspect." *United States v. Burbridge*, 252 F.3d 775, 778 (5th Cir. 2001). The Fifth Circuit agrees with other circuits that

---

[1] Plaintiffs argue that "nothing in [Sullivan's] reports or testimony indicate that Mr. Guerrero was driving the vehicle at the time of the infractions" and that Sgt. Sullivan only reported that he asked who owned the vehicle, not who was driving it. Docket no. 67 at 12. But in Sgt. Sullivan's report, to which Plaintiffs cite, Sgt. Sullivan reports that he asked Ms. Guerrero "who had been driving the SP vehicle. She said her father had." Docket no. 35-1 at 3; *see also* Docket no. 35-2 at 5 ("A lady at the home, who turned out to be his daughter, said that her father was driving the vehicle, who's the suspect -- she said he was driving the vehicle, and he went inside.")

[2] "A person commits an offense if the person does not stop or does not comply with the requirements of this section. An offense under this section: (1) involving an accident resulting in: . . . (B) serious bodily injury, as defined by Section 1.07, Penal Code, to a person is a felony of the third degree." Tex. Transp. Code § 550.021(c).

> [a]n eyewitness identification will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation. This comports with the general notion that, since eyewitnesses' statements are based on firsthand observations, they are generally entitled to a presumption of reliability and veracity.

*Id.* (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (internal quotations and citations omitted)). An eyewitness's account is credible because eyewitnesses "are seldom involved with the miscreants or the crime. Eyewitnesses by definition are not passing along idle rumor, for they either have been the victims of the crime or have otherwise seen some portion of it." *United States v. Bell*, 457 F.2d 1231, 1238–39 (5th Cir. 1972). Also, identified persons[3] who claim to have been witnesses of an offense can be held accountable if the information turns out to be inaccurate. *Burbridge*, 252 F.3d at 779.

Although the eyewitnesses identified the vehicle they saw commit the offense, and not Mr. Guerrero himself, their description of the incident and identification of the vehicle, taken with additional facts in this case, demonstrate that Sgt. Sullivan had probable cause to arrest Mr. Guerrero. The eyewitnesses described to Sgt. Sullivan the incident of the vehicle hitting the bicyclist, identified the vehicle outside of the duplex within minutes, and stated they had just seen the driver enter the duplex. Further, Ms. Guerrero confirmed that her father had been driving the vehicle. Identification of a vehicle involved in an offense in the same geographic area as the offense took place can support a finding of probable cause. *See Mendez v. Poitevent*, No. DR-13-CV-0065-AM-VRG, 2014 WL 12639318, at *15 (W.D. Tex. Sept. 30, 2014), *aff'd*, 823 F.3d 326 (5th Cir. 2016) (finding probable cause to arrest suspect after officers observed truck

---

[3] The eyewitnesses were individually identified by name. Docket no. 57 at 3.

matching description from radio broadcast of smuggling activity in same geographic area where the smuggling occurred and suspect attempted to flee).

Plaintiffs argue that it is unpersuasive that Sgt. Sullivan had probable cause to arrest Mr. Guerrero because Sgt. Sullivan did not witness the bicycle accident. But Sgt. Sullivan did not need to witness the accident himself for there to be probable cause because, as discussed above, the eyewitness report and identification and Ms. Guerrero's identification provided probable cause. Plaintiffs also argue that nothing in Sgt. Sullivan's reports or testimony indicate Mr. Guerrero was driving the vehicle at the time of the offense. But the evidence shows that Sgt. Sullivan asked Ms. Guerrero who had been driving the identified vehicle, and Ms. Guerrero stated that her father Mr. Guerrero had been.

Based on the eyewitnesses' report of the offense, eyewitnesses' identification of the vehicle minutes later in the same geographic area, eyewitnesses' report that the driver entered the duplex, and Ms. Guerrero's confirmation that her father Mr. Guerrero had been driving the identified vehicle, the Court finds that Sgt. Sullivan had probable cause to arrest Mr. Guerrero. The Court further finds that, given Defendants Ceja and Ramos received a dispatch from Sgt. Sullivan with information about the offenses Mr. Guerrero allegedly committed, these officers are entitled to benefit from the collective knowledge doctrine. *See United States v. Zuniga*, 860 F.3d 276, 283 (5th Cir. 2017) ("[T]he collective knowledge theory applies so long as there is 'some degree of communication' between the acting officer and the officer who has knowledge of the necessary facts . . . . The suspicion transferred by the law enforcement agents who observed [the suspect's] traffic violation suffices."). Thus, Off. Ceja also had probable cause to arrest Mr. Guerrero.

Although Defendants may have provided that they arrested Mr. Guerrero for the alcohol-related offense, even if they lacked probable cause to arrest for such an offense, the warrantless arrest was still lawful because the facts demonstrate that there was probable cause to arrest Mr. Guerrero for failure to stop and render aid. *See Devenpeck*, 543 U.S. at 153. Thus, Defendants had probable cause to arrest Mr. Guerrero without a warrant.

## B. Defendants' Entry Into Mr. Guerrero's Home Without a Warrant

Although the officers had probable cause to arrest Mr. Guerrero, there must have been exigent circumstances for the officers to enter the duplex without a warrant to execute that arrest. The Court must determine if Mr. Guerrero has demonstrated that the officers violated his constitutional rights when they entered his home without a warrant.

### 1. A Fact Issue Exists as to Whether Mr. Guerrero Has Standing

The officers first argue that Mr. Guerrero lacks standing to assert a claim of unlawful entry. An individual must show that one has a legitimate expectation of privacy in the property that was allegedly entered unlawfully. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). The officers extensively brief this issue, arguing Mr. Guerrero relinquished possession of the property and thus no longer has standing to assert a Fourth Amendment violation. Plaintiffs have presented evidence that Mr. Guerrero lived in one unit of the duplex, and his daughter Ms. Guerrero lived in the other unit of the duplex. The Court finds there is at least a factual dispute as to which unit was actually entered when the officers entered the duplex. Thus, there is at least a factual dispute as to whether Mr. Guerrero has standing to bring a claim for unlawful entry into the duplex unit in which he was allegedly living.[4]

---

[4] Plaintiffs allege that Defendants moved between the duplex units through an interior door that joins the units. Depending on which unit was actually entered by which Defendant, there is at least a factual dispute at this stage as to whether both of the Guerreros have standing.

## 2. Exigent Circumstances

"As a general rule, exigent circumstances exist when there is a genuine risk that officers or innocent bystanders will be endangered, that suspects will escape, or that evidence will be destroyed if entry is delayed until a warrant can be obtained." *United States v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009); *see United States v. Mendoza–Burciaga*, 981 F.2d 192, 196 (5th Cir. 1992), *cert. denied*, 510 U.S. 936 (1993) (finding exigent circumstances are present in situations in which "officers reasonably fear for their safety, where firearms are present, or where there is a risk of a criminal suspect's escaping or fear of destruction of evidence"). The Fifth Circuit has also identified non-exhaustive relevant factors to evaluate whether exigent circumstances existed:

> (1) the degree of urgency involved and amount of time necessary to obtain a warrant; (2) [the] reasonable belief that contraband is about to be removed; (3) the possibility of danger to the police officers guarding the site of contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge "that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic."

*Menchaca-Castruita*, 587 F.3d at 289–90. A court's analysis focuses on "the reasonableness of the officers' investigative tactics leading up to the warrantless entry." *United States v. Blount*, 123 F.3d 831, 838 (5th Cir. 1997). It is not a court's role to "examine each act in isolation and inquire whether the officers *could* have acted differently." *Id.* (emphasis in original). If "reasonable minds may differ," a court should not second-guess an experienced officer's judgment regarding the risks of a particular situation. *Id.*

Plaintiffs argue that there were no exigent circumstances for the warrantless entry into Mr. Guerrero's home because there was no "hot pursuit" of Mr. Guerrero, Mr. Guerrero did not

present a flight risk, Defendants had no reason to fear for their safety or that of others, and Mr. Guerrero was not in possession of any destructible evidence to justify the warrantless entry. On the other hand, Defendants argue there were exigent circumstances because Sgt. Sullivan was in "hot pursuit" of Mr. Guerrero, Mr. Guerrero presented a flight risk, there was reason to be concerned about the loss of evidence, and there was reason to believe Mr. Guerrero was injured.

Generally, police may enter a fleeing felon's residence to make an arrest "if they are in hot pursuit of said felon." *Martinez v. Nueces Cty., Tex.*, No. 2:13-CV-178, 2015 WL 65200, at *6 (S.D. Tex. Jan. 5, 2015), *aff'd sub nom. Martinez v. Day*, 639 F. App'x 278 (5th Cir. 2016), *as revised* (May 12, 2016) (citing *United States v. Santana*, 427 U.S. 38, 42–43 (1976) (holding a felony suspect in a public place cannot "thwart an otherwise proper arrest" by "retreating into her house")). For there to be exigent circumstances, there must have been "some sort of a chase, but it need not be an extended hue and cry 'in and about (the) public streets.'" *Santana*, 427 U.S. at 43.

Sgt. Sullivan argues that he was in continuous pursuit of Mr. Guerrero from the point he observed the vehicle's impaired driving, and that pursuit continued as the eyewitnesses reported the hit-and-run incident with the bicycle, the eyewitnesses led Sgt. Sullivan to Mr. Guerrero's vehicle and identified it, Sgt. Sullivan approached the duplex and Ms. Guerrero confirmed her father Mr. Guerrero had been driving the vehicle, and Ms. Guerrero refused to allow Sgt. Sullivan to see her father, after which he entered the duplex without a warrant. Plaintiffs argue there was no "hot pursuit" because Mr. Guerrero never knew that he was being pursued by Sgt. Sullivan, and further, that Sgt. Sullivan's pursuit ended when he stopped at the duplex, spoke to

Ms. Guerrero and Defendant Johnson, and waited for Ms. Guerrero to return from inside the duplex.

Although it is not a requirement for a suspect to know he or she is being pursued for a Court to find that an officer was in "hot pursuit" of that suspect, it is a factor that the Fifth Circuit considers when evaluating if exigent circumstances existed. *Menchaca-Castruita*, 587 F.3d at 289–90. In cases where courts find there was a "hot pursuit," the suspect often knows that he or she is being pursued, and courts consider in their analysis that the suspect cannot seek refuge from the pursuing officer in the home. *See, e.g.*, *Santana* 427 U.S. at 39-40 (officers were in "hot pursuit" after suspect was identified as having drugs in the home, officers saw suspect standing in doorway with brown paper bag, officers neared suspect and shouted "police" while showing identification, and defendant retreated into home); *Martinez*, 2015 WL 65200, at *8 (officers were in "hot pursuit" after officers had reasonable suspicion that suspect committed assault and attempted to detail and question him, observed the defendant commit the crime of evading arrest, and pursued defendant as he ran inside the home).[5] The Court also notes that the Fifth Circuit identifies "the degree of urgency involved" as a relevant factor, and the fact that Sgt. Sullivan stopped to talk to both Ms. Guerrero and Johnson when he arrived at the duplex. Thus, there is at least a fact question as to whether Sgt. Sullivan was in a continuous "hot

---

[5] Defendants point to the Supreme Court's decision in *Warden* as support for a finding of "hot pursuit" when the suspect did not know that the officers were pursuing him. There, officers entered the suspect's home and made a warrantless arrest after a taxi dispatcher described the suspect of an armed robbery and reported the suspect entered the home. *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 297–98 (1967). But as the Court explained in *Santana*, the *Warden* decision, in which the Court found there were exigent circumstances to enter the home and arrest the suspected armed robber without a warrant, was based on concerns over the safety of the officers and public, not on "hot pursuit." *Santana*, 427 U.S. at 42 n.3 (noting that *Warden* was based on the "exigencies of the situation," "and did not use the term 'hot pursuit' or even involve a 'hot pursuit' in the sense that that term would normally be understood.").

pursuit" of Mr. Guerrero or not, and thus, whether a "hot pursuit" can justify exigent circumstances to enter the duplex without a warrant.

The Court further finds that there is at least a fact question as to whether Mr. Guerrero presented a flight risk and whether there was a reasonable concern over a loss of evidence. Defendants argue that Mr. Guerrero presented a flight risk, thereby establishing exigent circumstances, because he fled from the scene of an accident and because a family member blocked Sgt. Sullivan's entry into the duplex. A court may consider the risk of a suspect fleeing the scene or the possibility that evidence may be removed or destroyed to determine if exigent circumstances existed. *See, e.g.*, *United States v. Fabian*, 220 F. App'x 340, 342 (5th Cir. 2007) (upholding the district court finding exigent circumstances because "it is entirely plausible that [suspects], who were still inside the home, could have heard the commotion and either attempted to flee the scene or destroy the evidence"). Here, however, there is at least a factual question as to whether Mr. Guerrero even knew of the officers' presence outside his duplex that might have led him to attempt to flee or destroy any evidence.

### C. Qualified Immunity

Although Plaintiffs allege a constitutional violation for warrantless entry into Mr. Guerrero's home, they fail to overcome the second prong of qualified immunity. Plaintiffs fail to show Defendants' actions were not objectively reasonable in light of clearly established law at the time of entry. It would not be clear to a reasonable officer in Sgt. Sullivan's position that his warrantless entry into the home was unlawful. Not all reasonable officers in Sgt. Sullivan's position would have known that his warrantless entry into the home violated Mr. Guerrero's constitutional rights. After Sgt. Sullivan saw the impaired driving, he continuously pursued the

driver as he learned of the alleged hit-and-run by whom he believed was the driver of the same vehicle, reached the duplex with the identified vehicle outside within minutes, and was told that Mr. Guerrero was the driver. The fact that the suspect is unaware of an officer's pursuit is only one factor to consider and does not bar a finding of exigent circumstances. Further, Plaintiffs point to no clear law, nor is the Court aware of any such law, that holds an officer who is in continuous pursuit of a suspect, then stops to ask about the suspect's identity and location and waits for the suspect to come out of the home, effectively breaks the continuous chain of a "hot pursuit" to where there are no longer exigent circumstances to enter the home.

Even if the "hot pursuit" ended when Sgt. Sullivan briefly waited for Ms. Guerrero to return with Mr. Guerrero, "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brown*, 524 F. App'x at 74. There is no evidence that Sgt. Sullivan knowingly violated the law, and the Court finds that Sgt. Sullivan did not act with plain incompetence when he continued his pursuit of Mr. Guerrero into the duplex. *See Zarnow at* 408 ("If reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity.").

Further, the Court finds that Defendants are at least entitled to qualified immunity because of a concern over a loss of evidence. Defendants argue that Sgt. Sullivan had reason to be concerned about the loss of evidence due to the dissipation of alcohol after Sgt. Sullivan believed Mr. Guerrero had been driving while intoxicated. Even if Plaintiffs allege a constitutional violation, they fail to show Sgt. Sullivan's actions were objectively unreasonable in light of clearly established law at the time of entry regarding the concern over loss of

evidence. *See* Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006) (citing *Ker v. California*, 374 U.S. 23, 40 (1963)) (recognizing officers may make a warrantless entry into a home "to prevent the imminent destruction of evidence").

Plaintiffs point to *Welsh v. Wisconsin* for support that a concern about the dissipation of alcohol does not support a finding of exigent circumstances to make a warrantless entry. But the *Welsh* Court only held that a warrantless entry into the home is not *per se* justified due to exigent circumstances to prevent the destruction of evidence when the arrest is for a minor offense. *See Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984); *see also United States v. Banks*, 540 U.S. 31, 37 n.4 (2003) (citing *Welsh*, 466 U.S. 740) ("[W]e have held that the risk of losing evidence of a minor offense is insufficient to make it reasonable to enter a dwelling to make a warrantless arrest.")). Sgt. Sullivan's concern over loss of evidence was related to hitting a bicyclist and fleeing and driving while intoxicated, which can be felonies in Texas. *See* Tex. Penal Code §§ 49.04, 49.07.

At the very least, the law is unsettled as to whether a concern of loss of alcohol blood level justifies the warrantless entry into the home. Some courts have recognized such a concern to find exigent circumstances existed. *See Hooks v. Dir., TDCJ-CID*, No. CIV. A. 2:04CV389, 2008 WL 3852757, at *10 (E.D. Tex. Aug. 14, 2008), *aff'd sub nom. Hooks v. Thaler*, 394 F. App'x 79 (5th Cir. 2010) (finding exigent circumstances in part because the officer "testified that he believed that there was intoxication and he feared that the evidence would be lost if they waited"). Here, Sgt. Sullivan pursued the driver of the vehicle he believed to have hit a bicyclist, fled the scene, and drove while intoxicated. It would not be clear to a reasonable officer in Sgt.

Sullivan's position that his warrantless entry into the duplex because of a concern of loss of evidence for a possible felony was unlawful.

Thus, Sgt. Sullivan is entitled to qualified immunity on Mr. Guerrero's claim of warrantless entry into his home under the doctrine of exigent circumstances. As discussed above, the collective doctrine applies to Defendants Ceja and Ramos, who each received a dispatch with information supplied by Sgt. Sullivan. Thus, Ceja and Ramos are also entitled to qualified immunity. Because the Court granted Defendant Spencer's Motion to Join (Docket no. 71), he is also entitled to qualified immunity.

**IV.     Ms. Guerrero's Claims for Unlawful Entry and Unlawful Arrest**

Ms. Guerrero argues she is entitled to summary judgment on her claims for unlawful entry against Sullivan, Ceja, and Ramos and unlawful arrest against Ramos and Ceja because Defendants arrested her without a warrant or probable cause and entered her home without a warrant or probable cause and exigent circumstances. Defendants argue they are entitled to summary judgment because they had probable cause to arrest her and because there was probable cause and exigent circumstances to enter her home without a warrant. In the alternative, Defendants argue they are entitled to qualified immunity.

**A.  Defendants' Arrest of Ms. Guerrero Without a Warrant**

First, the Court will determine if Ms. Guerrero has demonstrated that the officers violated her constitutional rights when they arrested her without a warrant.  For the officers to have lawfully arrested Ms. Guerrero without a warrant, they must have had probable cause.

As discussed above, "[p]robable cause justifying an arrest 'means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or

one of reasonable caution, in believing, in the circumstances shown, that the suspect committed, is committing, or is about to commit an offense.'" *Hogan*, 722 F.3d at 731. Defendants argue they had probable cause to arrest Ms. Guerrero for resisting arrest, preventing apprehension, and interference with public duties because she blocked the officers' entry into the duplex. *See* TEX. PENAL CODE §§ 38.03(a), 38.05(a), 38.15(a)(1). Plaintiffs argue that there was not probable cause to arrest Ms. Guerrero because her refusal to allow the officers to enter her home did not create probable cause to arrest her.

Ms. Guerrero states that, after she told Sgt. Sullivan that she would not consent to him entering her home or allow him to speak to her father, she "did nothing more than stand on her porch with her hand on the front door knob." Docket no. 35 at 4. Defendants testified that Ms. Guerrero physically blocked entry into the home by refusing to let go of the door knob or move out of the way so that they could enter. Docket no. 57-2 at 3; *see also* Docket no. 57-3. Det. Ramos alleges that he saw Ms. Guerrero attempt to grab Sgt. Sullivan when Sgt. Sullivan tried to enter the duplex. Docket no. 35-4 at 2. Det. Ramos alleges that he then grabbed Ms. Guerrero's arm to attempt to arrest her for interference with Sgt. Sullivan, and when he did, she tried to pull away from him. *Id.* Plaintiffs argue that Det. Ramos's affidavit indicates that he arrested Ms. Guerrero before she provided any reason for arrest, but the uncontroverted facts show that Det. Ramos saw Ms. Guerrero attempt to grab Sgt. Sullivan as he attempted to enter the duplex.

The Court finds the officers had probable cause to arrest Ms. Guerrero. Sgt. Sullivan alleges Ms. Guerrero physically blocked his entry into the duplex by holding on to the door knob—a fact that Ms. Guerrero admits—and not moving out of his way. "A person commits an offense if the person, with criminal negligence interrupts, disrupts, impedes, or otherwise

interferes with a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE § 38.15(a)(1). Ms. Guerrero blocked and impeded the officers' entry into the duplex to arrest Mr. Guerrero; thus, the officers had probable cause to arrest her. *See Martinez*, 2015 WL 65200, at *8 (finding it was not unreasonable for officers to believe they had probable cause to arrest individuals for interference with peace officer after individuals "physically blocked [the officers'] entrance into the residence" to pursue a fleeing suspect).

Plaintiffs also argue that Ms. Guerrero was attempting to block an unlawful entry by the officers. In *Freeman v. Gore*, the Court found there was an unlawful arrest because the officers conducted an unlawful, warrantless search of the plaintiff's home and there was an absence of any physical action to block entry into the residence. In that case, the plaintiff's actions were limited to "insisting that the deputies could not enter her home unless they had a search warrant." *Freeman v. Gore*, 483 F.3d 404, 413–14 (5th Cir. 2007). Here, however, the Court finds that the officers lawfully entered the duplex to execute a warrantless arrest, and Ms. Guerrero physically blocked the officers' entry into the duplex.

Here, the uncontroverted evidence shows that Ms. Guerrero stood in front of the entry to the duplex and attempted to grab Sgt. Sullivan when he attempted to enter the duplex to arrest Mr. Guerrero. Under these circumstances, the Court finds that a reasonable officer would have believed that Ms. Guerrero was committing the crime of interference with public duties; thus, there was probable cause for the officers to arrest Ms. Guerrero.

### B.  Defendants' Entry Into Ms. Guerrero's Home Without a Warrant

Plaintiffs argue that Defendants had no legal justification to enter Ms. Guerrero's home to find and arrest Mr. Guerrero. Defendants argue that there were exigent circumstances to enter Ms. Guerrero's half of the duplex to locate and arrest Mr. Guerrero. In their motion for summary judgment, Plaintiffs argue that "[w]hatever justification exists for Defendants' warrantless nighttime entry into Ms. Guerrero's home hinges solely on the officers' suspicions about Mr. Guerrero." Docket no. 35 at 21.

Plaintiffs base their arguments that the entry into Ms. Guerrero's duplex unit was unlawful on the same arguments that the entry into Mr. Guerrero's duplex unit was unlawful. Thus, for the same reasons that Plaintiffs are not entitled to summary judgment for the unlawful entry claim brought by Mr. Guerrero, Plaintiffs are not entitled to summary judgment on Ms. Guerrero's unlawful entry claim. Further, as with Mr. Guerrero's claim, the Court finds that Defendants Sullivan, Ceja, Ramos, and Spencer are entitled to qualified immunity for their warrantless entry into Ms. Guerrero's home to arrest Mr. Guerrero. At the very least, the law was unsettled on Sgt. Sullivan being in hot pursuit and there being a concern for loss of evidence, and the other officers are entitled to benefit from the collective knowledge doctrine.

### CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Jeremy Spencer's Motion to Join (Docket no. 71), DENIES Plaintiffs Leonard Guerrero and Stephanie Guerrero's Motion for Partial Summary Judgment (Docket no. 35), and GRANTS Defendants Erica Ceja, Felipe Ramos, and Brian Sullivan's Cross-Motion for Partial Summary Judgment (Docket no. 57).

No dispositive motions have been filed on the following claims brought by Plaintiffs and survive at this time: (1) excessive force by Spencer and Ramos against Johnson; (2) excessive force by Ramos against Ms. Guerrero; (3) unlawful arrest of Johnson by Ramos, Spencer, Sullivan, and Ceja; and (4) municipal liability against the City of San Antonio.

It is so ORDERED.

SIGNED this 5th day of July, 2018.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE